

ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 0 4 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

JEORGE WINSTON COLLIER AND
ERIC WAYNE SWINEY

**CRIMINAL COMPLAINT**
Case Number: 1:15-MJ-169

UNDER SEAL

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about June 13, 2014 in Fulton County, in the Northern District of Georgia, defendant(s) did

conspire to commit the following offense against the United States: to knowingly and intentionally distribute, or possess with the intent to distribute, a controlled substance in violation of Title 21 United States Code, Section 841, said conspiracy involving at least five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance,

in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

I further state that I am a(n) Task Force Officer and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

_____
Signature of Complainant
Joseph M. Simone

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

March 4, 2015   2:20 pm                    at   Atlanta, Georgia
Date                                             City and State

E. CLAYTON SCOFIELD, III
UNITED STATES MAGISTRATE JUDGE            _____
Name and Title of Judicial Officer                Signature of Judicial Officer
AUSA Garrett L. Bradford / 2014R01082

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Joseph M. Simone, Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, state as follows:

### AFFIANT BACKGROUND

1. I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Detective with the Sandy Springs, Georgia Police Department currently assigned to the Atlanta High Intensity Drug Trafficking Area (HIDTA) Task Force as a DEA Task Force Officer. I am State of Georgia P.O.S.T. certified and have been employed by the Sandy Springs Police Department for approximately seven years. Prior to that, I was employed by the Fulton County, Georgia Police Department for approximately 11 years.

3. In connection with my official duties, I investigate criminal violations of drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 2, 1952, 1956, and 1957; and O.C.G.A. Title 16, Chapter 13. I have received specialized training in the enforcement of the drug laws. I have participated in over one hundred narcotics cases and am well versed through my experience in the tactics, techniques, and methods of

operation of individuals associated with and involved in illegal narcotics distribution, including the distribution, storage, and transportation of illegal narcotics. I am familiar with the common appearance, packaging, and texture of controlled substances.

4. During my career in law enforcement, I have participated in numerous search and seizure warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized traditional investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, and use of undercover agents.

5. Based on my experience and training I know that individuals smuggle and/or transport illegal controlled substances utilizing vehicles. Often, drug traffickers will reside in one location and store, or "stash" drug supplies in another. While traveling to and from stash locations, traffickers will often utilize vehicles owned by or registered to other individuals.

## SOURCES OF INFORMATION

6. The information contained in this Affidavit is based on my own personal knowledge of this case, as well as information relayed to me by other law enforcement authorities and sources of information. The facts related in this

Affidavit do not reflect the totality of information known to me or other officers, merely the amount needed to establish probable cause to support the criminal case.

## FACTUAL SUMMARY – PROBABLE CAUSE BASIS

7. On June 13, 2014, at approximately 8:31 p.m., I observed, via video, a black GMC Sierra truck ("the Truck") back into the driveway of a residence at 3682 Spring Street, Chamblee, Georgia (the "House"). A male, later identified at Jeorge Winston COLLIER, got out of the front passenger seat of the Truck, retrieved a bag from the rear seat of the Truck, and carried the bag inside the House.

8. At approximately 8:39 p.m., I saw a black male (BM#1) come out of the House, speak with the driver of the Truck, take a picture of the Truck, then go back inside the House.

9. At approximately 8:56 p.m., I saw COLLIER and BM#1 come out of the House. COLLIER was carrying a box, which he placed in the rear seat area of the Truck. At approximately 8:59 p.m., the Truck left the House, and agents followed.

10. At approximately 9:07 p.m., Georgia State Patrol Trooper Doug Allen observed the Truck commit a traffic infraction on GA 400 southbound, specifically, failure to maintain its lane of traffic by drifting over the solid white fog line with its right wheels. Trooper Allen also observed that the Truck had

extremely dark window tint on the front and rear side windows. At that time, Trooper Allen pulled the Truck over for a traffic stop.

11. Trooper Allen approached the Truck and asked the driver, Eric Wayne SWINEY, for his driver's license. Trooper Allen observed SWINEY fumble in his pockets for a bit and produce his license. Trooper Allen noted that SWINEY's hand was trembling when he handed over his license.

12. COLLIER, who was in the passenger seat, said that the Truck belonged to his girlfriend and handed his driver's license and vehicle paperwork to Trooper Allen.

13. SWINEY and COLLIER then gave conflicting statements. Specifically, Trooper Allen asked SWINEY to get out of the vehicle, then asked him where he was coming from. SWINEY said that they had gone to Kroger and bought flowers for COLLIER's girlfriend, went to the hospital, and were now going downtown. Trooper Allen asked where they were going downtown, but SWINEY said that he did not know. Trooper Allen then asked COLLIER where they were coming from, and COLLIER said that they had gone to see his friend. Trooper Allen asked COLLIER if they went to the hospital, and COLLIER replied that they had not.

14. Suspecting SWINEY and COLLIER were engaged in criminal activity, after giving SWINEY a warning for failure to maintain lane and illegal window tint, Trooper Allen asked SWINEY for consent to search the Truck. SWINEY declined. Trooper Christopher Matthews, who was present at that time,

conducted a sniff of the outside of the Truck with his certified narcotics K-9, Kayla. Kayla indicated to the rear passenger door of the Truck.

15. Trooper Allen searched the Truck and found approximately four kilogram-sized packages of cocaine in a plastic storage box in the rear passenger floorboard. A subsequent laboratory analysis determined the packages contained 3.996 kilograms of cocaine. Trooper Allen also found am FN Herstal 57 caliber handgun loaded with 18 rounds of ammunition in the front console of the truck.

## CONCLUSION

16. Based on the information contained in this Affidavit, there is probable cause to believe that, in the Northern District of Georgia and elsewhere, COLLIER and SWINEY did conspire to commit the following offense against the United States: to knowingly and intentionally distribute, or possess with the intent to distribute, a controlled substance in violation of Title 21, United States Code, Section 841, said conspiracy involving at least five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

FURTHER YOUR AFFIANT SAYETH NOT