IN THE UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES | * | |
| | * | |
| v. | * | Indictment No. |
| | * | |
| JEORGE COLLIER, | * | 1:15-CR-107 |
| | * | |
| Defendant. | * | |

### MOTION TO SUPPRESS UNLAWFULLY OBTAINED EVIDENCE

**COMES NOW** Jeorge Collier, by and through undersigned counsel, and hereby makes and files this, his Motion to Suppress Unlawfully-Obtained Evidence which the candid statements of the primary arresting officer shows is not legally admissible against him because the arresting officers were acting on little more than a hunch, making the repeated search of Defendant's vehicle an unconstitutional "fishing expedition", and all testimony and information concerning said items should not be heard by the trier of fact.  In support thereof, he states the following:  That the search of the defendant was in violation of the Fourth Amendment of the Constitution of the United States, to wit:

"That the Fourth Amendment to the United States Constitution which directs that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, *shall not be violated* no warrant shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

That federal law permits a person to be briefly stopped and detained if there is articulable suspicion to do so, but they have to have a *reasonable* suspicion. U.S. v. Place, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983); Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); (discussing roadblock guidelines). The reasonable, articulable suspicion "that the law has been or is about to be violated is less than probable cause, but greater than mere caprice."

### 1.

In the instant case, on the 13th day of June, 2014, in the City of Atlanta, on Georgia State Route 400 Southbound, Trooper C.D. Allen of the Georgia State Patrol stopped a GMC Sierra 1500 driven by co-defendant Eric Swiney. In his incident report the trooper alleged that he observed the vehicle driven by Eric Swiney: "fail to maintain lane of traffic by drifting over the solid white fog line with its'right wheel" additionally, he indicated that he noticed an extremely dark window tint.

### 2.

The trooper ordered Mr. Swiney from the vehicle and instructed Mr. Collier to remain seated inside the vehicle. The trooper requested and received driver's license and documentation on the vehicle. The trooper began an un-Mirandized inquiry of the defendant's. He apparently does not believe that the driver is

impaired as evidenced by his failure to make any inquiry about the sobriety of the driver. Trooper C.D. Allen with the assistance of other troopers verified that driver's license and vehicle documentation was valid, consequently issues a written warning. Trooper Allen indicates in his incident report that: "I returned all documents to both parties then issued an explained the warning to Swiney."

According, to the result reached in that case, an investigatory stop involving a search of the vehicle is legal as long as it does not "unlawfully prolong the detention". In this case, and the officer used that denial of consent as justification to detain Defendant while he proceeded with his unrelated search.

The search of the vehicle, requires that the officer have some particularized suspicion since the investigation of the traffic irregularity had concluded and consent to search had been denied. The contraband was not in plain sight, no arrest had been made based on the vehicle operation. Illinois v. Caballes, 543 U.S. 405 (2005)

A. **THE TROOPER DID NOT HAVE REASONABLE SUSPICION TO SEARCH AFTER HE HAD VERIFIED THEIR CREDENTIALS AND ISSUED THE WARNING.**

The officer that interacted directly with Eric Swiney had no indications of concealed drugs or of a particularized location where drugs were suspected to be

concealed, but instead engaged in a fishing trip for culpability. The trooper's were not concerned about road safety or driver impairment. The troopers engaged the parties in frivolous conversations about eateries in Alabama. It is important to note that the troopers indicate in on the dash camera recording that that have a hunch that they are up to something. Nonetheless, they have delayed there departure well past what is legal and reasonable.

At that point, the officer had no further probable cause to look for further evidence of criminal activity, because he had ended his traffic investigation and satisfied his curiosity. "The existence of probable cause is determined by, whether, "given all the circumstances …, there is a fair probability that contraband or evidence of a crime will be found in a particular place…" Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983)

## B. THERE IS NO LOGICAL CONNECTION BETWEEN UNUSUAL, BUT NOT ILLEGAL, VEHICLE OPERATION AND CONCEALED DRUGS.

In the case at bar, the arresting officer claimed that he witnessed Eric Swiney "fail to maintain lane of traffic by drifting over the solid white fog line with its' right wheel". It is true that there can be articulable suspicion for a traffic stop even when the traffic violation is minor, but it is also important to note that there is no crime implicated by this manner of driving. The conclusion of the inquiry with a

reasonable explanation provided should have ended the encounter, but the officer decided to pursue the encounter, and started a *new* investigation. The law is clear that even a legitimate traffic stop will require the presence of probable cause to pursue further information – "the detention must be reasonably related in scope to the circumstances which justified the interference in the first place. Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop." U<u>nited States v. Beltran-Palafox</u>, 731 F. Supp. 2d 1126, 1145, 2010 U.S. Dist. LEXIS 54541 (D. Kan. 2010). At the point that the officer had sated his curiosity about the manner in which the vehicle had been operated, told issued Eric Swiney a warning and returned all documentation to him. When the officer asked for permission to search and Mr. Swiney immediately refused but was not allowed to leave, the brief investigative detention ended and an unlawful detention began, because the *purpose of the traffic stop had been fulfilled*.

## II. THERE WERE NO VALID GROUNDS TO SEARCH ERIC SWINEY'S OR JEORGE COLLIERS' VEHICLE LONGER AFTER THE TRAFFIC STOP ENDED.

An officer may certainly detain motorists for investigation when he observes them driving erratically, based on his suspicion that a legal violation is occurring, as "the behavior giving rise to the reasonable suspicion need not be a violation of the law.

However, the question then arises *in this case* as to whether the detention was unnecessarily expanded by the actions of the investigating officer who stopped a motorist having car problems and then decided to go far further than the observed facts indicated and pursue hidden drugs. There is no question that an officer can conduct a search of a vehicle driven by a citizen for drugs *incident to arrest* or if the contraband is in plain view. However, there is absolutely no indication that either Eric Swiney or Jeorge Collier were formally placed under arrest prior to the search, and every indication that he was illegally detained until an open-air sniff of his vehicle by a K-9 could be conducted; he was not permitted to leave until after the additional search took place.

An officer may certainly detain motorists for investigation when he observes them driving erratically, based on his suspicion that a legal violation is occurring, as "the behavior giving rise to the reasonable suspicion need not be a violation of the law." Further, even if police have no basis for suspecting that a person detained at a traffic stop is engaged in criminal activity unrelated to the stop, police may lawfully ask questions during the course of the stop about such unrelated activity, so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop" (*emphasis supplied*). However, the question then arises in this case as to whether the detention was unnecessarily expanded by the actions of the investigating officer who stopped a

motorist having car problems and then decided to go far further than the observed facts indicated and pursue hidden drugs. There is no question that an officer can conduct a search of a vehicle driven by a citizen for drugs *incident to arrest* or if the contraband is in plain view. However, there is absolutely no indication that either Eric Swiney or Jeorge Collier was formally placed under arrest prior to the search, and every indication that he was illegally detained until an open-air sniff of his vehicle by a K-9 could be conducted; he was not permitted to leave until after the *additional* search took place.

The officer engaged in permissive behavior up to and including his request for consent to search from Defendant. However, he went further than the law allows. "[I]t is not the nature of the question that offends the Fourth Amendment, it is whether in asking the questions the officer impermissibly *detains* the individual beyond that necessary to investigate the traffic violation precipitating the stop." The officer was permitted to ask for consent to search, even as an afterthought at the conclusion of the investigatory traffic stop, but the denial of consent to search created an entirely new situation that violates that rule.

There were decidedly two different phases of the traffic stop in question – the first being solely the traffic stop itself, <u>which concluded when the officer issued and explained the written warning</u>. The second phase began the instant that the investigating officer insisted on performing a search of the vehicle with a K-9 unit

after the initial traffic stop had been investigated and concluded, and purposefully kept Swiney and Collier at the scene while he conducted the search. Though it is termed a "free air search", there was nothing "free" about this incident. There was nothing new discovered during that traffic stop that gave the officer any reason to believe that Eric Swiney or Jeorge Collier was concealing illegal substances somewhere on the vehicle he was driving, and the officer was preventing Eric Swiney and Jeorge Collier from continuing with their business and actively keeping his vehicle from leaving. A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. United States v. Jacobsen, 466 U.S. 109, 124, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). The interests are enshrined in both the United States and Georgia Constitutions for the protection of citizens against unreasonable government behavior; this certainly qualifies.

The officer noted in his report that "Mr. Swiney was "fumbling around in pockets for a bit and with trembling hands" additionally, the officer felt that their explanations were inconsistent. Contrary to the actions taken by the officer, even coupling nervous behavior with inconsistencies isn't sufficient, either. His decision to pursue a further level of investigation without any reasonable cause to do so demonstrates that the evidence seized by law enforcement officers from Eric Swiney and Jeorge Collier *must* be suppressed in the interests of justice.

Since there were factually two separate investigations, the officer was bound by a higher legal standard for the subsequent search. "The appropriate legal standard for determining whether the additional questioning and the walk-around exceeded the scope of permissible investigation, in the absence of consent, is whether the officers had a *reasonable suspicion* that [the Defendant] was transporting illegal drugs. If the officers had no reasonable suspicion that [the Defendant] was transporting drugs, and if [the Defendant] did not consent to the search, then the detention following the conclusion of the traffic stop exceeded the scope of permissible investigation." It may be easily analogized to the case at bar using the similarities between the two cases: "Since the dog search was in no way connected to any problem with the [turn from one road onto an adjoining road], the officer must have had a reasonable suspicion that Eric Swiney and Jeorge Collier] were transporting drugs." "[E]ven if Swiney were nervous, as if most citizens would not be when stopped by the police, "reasonable suspicion to detain and investigate for illicit drug activity does not arise from nervousness. Stated more plainly, and directly applicable to *this* case, "[t]o meet the reasonable suspicion standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable

cause, it must be more than mere caprice or a hunch or an inclination." That was clearly *not* what happened here.

## CONCLUSION

It is well-established that a display of nervousness, without more, is insufficient to authorize a search of a vehicle. There was no arrest before discovery of contraband during a vehicle search that arose *after* the one anomaly in driving by Eric Swiney had been thoroughly investigated and had ended without an arrest. Therefore, the search of the vehicle *in fact* further extended the detention without consent and without being either a search incident to arrest or a search conducted pursuant to The contraband located must lawfully be suppressed under the governing legal standards.

**WHEREFORE**, the defendant demands that the evidence obtained by virtue of the aforementioned illegal search and seizure be suppress and that the United States Attorney, his agents, police officers and any other witnesses called by the United States Government to testify against the defendant in the above styled case be enjoined and restrained from mentioning, alluding to, identifying, or otherwise calling the attention to the jury of the existence of said contraband.

Respectfully submitted, this the 5th day of May, 2015.

Rickey L. Richardson
Attorney for Defendant

The Richardson Law Office P.C.
The 25th Peachtree Building
1718 Peachtree Street, Suite 180
Atlanta, Georgia 30309
404-892-6420 (office)
404-892-6417 (facsimile)
rickeyrichardson@bellsouth.net

IN THE UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES | * | |
| | * | |
| v. | * | Indictment No. |
| | * | |
| **JEORGE COLLIER,** | * | 1:15-CR-107 |
| | * | |
| Defendant. | * | |

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the Defendant's **Motion to Suppress** upon:

The Honorable Garrett L. Bradford
Assistant United States Attorney
U.S. Attorney's Office, Northern District of Georgia
75 Spring Street, S.W., Suite 600, Atlanta, Georgia 30303
Tel: 404.581.6042
Fax: 404.581.6181

Respectfully submitted, this the 5th day of May, 2015.

_____
Rickey L. Richardson
Georgia Bar No. 603839
Attorney for Defendant


The Richardson Law Office P.C.
The 25th Peachtree Building
1718 Peachtree Street, Suite 180
Atlanta, Georgia 30309
404-892-6420 (office)
404-892-6417 (facsimile)
rickeyrichardson@bellsouth.net